UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
YUSUF ABDUR-RAHMAN, *pro se*,          :
                                       :
                Plaintiff,      :
                                       :      **MEMORANDUM AND ORDER**
          -against-                  :      10-cv-3092 (DLI) (LB)
                                       :
DUKE TERRELL, Warden; C. WILLIAMS,:
A/W of Medical Department; H. GEORGY,  :
Medical Director; NER R. NEWLAND,      :
Medical Doctor ("MD2"); and the UNITED :
STATES DEPARTMENT OF JUSTICE,          :
                                       :
                Defendants.     :
------------------------------------------------------------ x
**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se* plaintiff Yusuf Abdur-Rahman ("Plaintiff") brought this *Bivens* action[1] alleging that he did not receive adequate medical care while incarcerated in the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn") and the Metropolitan Correction Center in Manhattan, New York ("MCC Manhattan"). Defendants, Warden Duke Terrell, medical providers Williams, Georgy and Newland, and the United States Department of Justice ("DOJ") (collectively "Defendants")[2] moved to dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure and, alternatively, summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposed the motion. For the reasons set forth below, Defendants' motion for summary judgment is granted.

---

[1] As Plaintiff names a federal agency as a defendant, the court construes the complaint as raising claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as opposed to 42 U.S.C. § 1983, which applies only to claims against state actors.

[2] Former defendant Ittayem, who was not named in Plaintiff's Second Amended Complaint, which is the operative complaint in this action, but was named in the previous complaint, joins in Defendants' motion. To the extent that he is still a party to this action, the analysis herein applies equally to any claims against him.

## BACKGROUND

Plaintiff is currently serving a 101-month prison sentence stemming from a November 16, 2010 conviction in the United States District Court for the Southern District of New York. (Decl. of Seth D. Eichenholtz, Dkt. Entry 98-3 ("Eichenholtz Decl."), Ex. D.)  Plaintiff was incarcerated at MCC Manhattan from March 30, 2009 until January 15, 2010. (Defs.' Statement of Undisputed Material Facts, Dkt. Entry 98-2 ("Defs.' 56.1 Stmnt."), ¶ 2; Aff. in Opp'n to Mot. for Summ. J., Dkt. Entry 98-5 ("Pl.'s Opp'n"), ¶ 2.)[3] Plaintiff was then transferred to MDC Brooklyn, where he was incarcerated until April 27, 2011. (Defs.' 56.1 Stmnt. ¶ 3; Pl.'s Opp'n ¶ 2.)

Plaintiff asserts that he suffers from AIDS. (*See* 2d Am. Compl., Dkt. Entry 67, ¶ 1.)  On April 13, 2010, Plaintiff allegedly filed a Request for Administrative Remedy ("BP-9") at MDC Brooklyn, complaining that he was not receiving the correct medication to treat his AIDS and his medical providers had not performed any tests to determine his CD4 cell count and viral load count.[4] (Defs.' 56.1 Stmnt. ¶ 74; Pl.'s Opp'n Ex. 13.)  Plaintiff claims that he did not receive a

---

[3] Defendants contend that the facts set forth in their 56.1 Statement should be deemed admitted because Plaintiff did not counter their 56.1 Statement with responses in correspondingly numbered paragraphs. (*See* Defs.' Reply Statement to Pl.'s Opp'n, Dkt. Entry 98-7, ¶ 1 & n.1.) In his opposition, Plaintiff responded to Defendants' 56.1 Statement through an affidavit and, while the paragraphs in the affidavit do not directly correspond with Defendants' 56.1 Statement, it is clear that they are meant to rebut certain facts in Defendants' 56.1 Statement. (*See generally* Pl.'s Opp'n.)  In light of Plaintiff's *pro se* status, the court will construe Plaintiff's affidavit as his response pursuant to Local Civil Rule 56.1(b).

[4] According to the United States Department of Health and Human Services, a viral load refers to the level of the HIV virus in a patient's blood and, among other things, is used to determine whether or not the patient's medications are working. *See Viral Load*, AIDS.gov, aids.gov/hiv-aids-basics/just-diagnosed-with-hiv-aids/understand-your-test-results/viral-load/index.html  (last visited Sept. 25, 2012).  A CD4 count reflects the level of immune cells in a person's blood and also is used by doctors to determine the appropriate treatment for a patient. *See CD4 Count*, AIDS.gov, aids.gov/hiv-aids-basics/just-diagnosed-with-hiv-aids/understand-your-test-results/cd4-count/index.html (last visited Sept. 25, 2012).

response to his BP-9.  (Defs.' 56.1 Stmnt. ¶ 75; Pl.'s Opp'n ¶ 67.)  Plaintiff maintains that he filed a Regional Administrative Remedy Appeal ("BP-10") on May 2, 2010 because he did not receive a response to his BP-9.  (*See* Defs.' 56.1 Stmnt. ¶ 76; Pl.'s Opp'n ¶ 68.)  Plaintiff alleges that, on May 21 or May 23, 2010, he filed a Central Office Administrative Remedy Appeal ("BP-11").  (*See* Eichenholtz Decl. Ex. B., US193; Pl.'s Opp'n Ex. 14.)  Defendants assert that there is no record that Plaintiff filed requests for administrative remedies in April and May 2010.  (Defs.' 56.1 Stmnt. ¶ 78; Decl. of Kenneth Bork, Dkt. Entry 89 ("Bork Decl."), ¶ 12, Ex. 2.)

On June 16, 2010, Plaintiff submitted a Request for Informal Resolution ("BP-8"), contending that he had been receiving the wrong antiviral medication for his AIDS.  (Pl.'s Opp'n Ex. 15.)  The same day, one of his medical providers responded, "if you have a problem with your medication [sic] need to sign up for sick call first and you will be placed on call out and discuss it with the clinician.  This is not the right way or form.  You were seen on 6/14/10 [sic] did you discuss your issue with the physician [sic]." (*Id*.)

On September 29, 2010, Plaintiff filed a BP-10, again alleging that he was not receiving adequate treatment for his AIDS and wrote that his claim was "sensitive."  (*See* Eichenholtz Decl. Ex. B., US194-95.)  More specifically, Plaintiff complained that he was being administered the drug Atripla, even though it was appropriate for patients with HIV-1, but not "full-blown AIDS."  (*Id*.)  On October 1, 2010, the Administrative Remedy Coordinator ("ARC") for the Northeast Regional Office rejected Plaintiff's BP-10.  (*Id.* US194.)  The notice explained that Plaintiff's BP-10 was rejected because:  i) Plaintiff must first file a BP-9 request and receive a response from the warden before filing an appeal through a BP-10; and ii) the issue Plaintiff raised was not sensitive and, therefore, he could not bypass the BP-9 request.  (*Id*.)  The notice also informed Plaintiff that he should "file a request or appeal at the appropriate level via regular

3

procedures." (*Id.*)

On October 5, 2010, Plaintiff filed a BP-11 appealing the ARC's rejection of his BP-10. (*Id.* US193.)  In the BP-11, Plaintiff referenced the May 21, 2010 BP-11 he claimed to have filed and again asserted that he was not receiving the proper medication for his AIDS. (*Id.*)  On November 2, 2010, the ARC from the Central Office rejected the BP-11 because the issue it raised was not sensitive, and instructed Plaintiff to file a request or appeal at the appropriate level. (*Id.* US192.)

Plaintiff filed another BP-8 on December 30, 2010, asserting that his latest blood tests showed that his immune cells had decreased dramatically, but that the medical staff would not change his medication. (*Id.* US198; Defs.' 56.1 Stmnt. ¶ 88; Pl.'s Opp'n ¶ 80.)  On January 5, 2011, Plaintiff's counselor responded, explaining that Plaintiff was scheduled to be seen by the staff physician at the chronic care clinic and should discuss his concerns with the doctor during that consultation. (Eichenholtz Decl. Ex. B., US198.)

On January 14, 2011, Plaintiff submitted a BP-9, again asserting that he was not receiving proper care for the same reasons stated in his most recent BP-8. (*Id.* US 197; Defs.' 56.1 Stmnt. ¶ 90; Pl.'s Opp'n ¶ 82.)  Plaintiff added, "[o]n January 6, 2011, Dr. Newland ordered the . . . blood tests, and stated that he wouldn't change my medication(s) until these test [sic] were complete, and up to this date, my blood hasn't been drawn for the above necessary test." (Eichenholtz Decl. Ex. B., US197.)  On February 2, 2011, Terrell, the MDC Brooklyn warden, responded, "[o]n January 26, 2011, the physician received the results of your viral load test.  The physician is awaiting receipt of the results of your genotype test.  Accordingly, your request for relief has been granted." (*Id.* US196.)  Terrell also stated that, if Plaintiff was dissatisfied with the response, he could appeal to the Regional Director. (*Id.*)

4

On February 14, 2011, Plaintiff filed a BP-10 appealing Terrell's response, again asserting that he was receiving the incorrect medication to treat his AIDS. (*Id.* US187.) On March 15, 2011, the Regional Director denied Plaintiff's appeal, finding that he was receiving appropriate care in compliance with applicable Clinical Practice Guidelines and Plaintiff continued to have access to sick call for any concerns. (*Id.* US188.)

On May 2, 2011, Plaintiff filed a BP-11 with the Central Office appealing the denial of his most recent BP-10. (Defs.' 56.1 Stmnt. ¶ 94; Pl.'s Opp'n ¶ 86.) The Central Office rejected the appeal because Plaintiff did not include copies of his BP-9, BP-10, receipts or verified photocopies of the documents. (Bork Decl. ¶ 17, Ex. 2.) Defendants assert that Plaintiff was told that he could resubmit his BP-11 attaching the necessary documents within 15 days. (*Id.* ¶ 17.) Plaintiff claims that he had affixed the appropriate documentation and did not receive the rejection notice, probably because, at around the same time, he was being transferred to a prison in Lompoc, California. (Pl.'s Opp'n ¶¶ 87-88.) Plaintiff never submitted an additional BP-11 or any other requests for administrative remedies. (Bork Decl. ¶ 18.)

On June 25, 2010, shortly after he filed his first BP-8, Plaintiff brought the instant action, alleging, *inter alia*, that he was deprived of proper AIDS treatment while in MCC Manhattan and MDC Brooklyn. (*See* Compl., Dkt. Entry 1.) On September 13, 2010, the court *sua sponte* dismissed Plaintiff's claims against all defendants in their official capacities, as well as all claims against Assistant United States Attorney Rachel Kovner on absolute immunity grounds and MDC Staff Attorney Nicole McFarland because there was no allegation that she was involved personally in any of the alleged constitutional violations. *See Abdur-Rahman v. Kovner*, 2010 WL 3715423 (E.D.N.Y. Sept. 13, 2010).

On October 19, 2010, Plaintiff filed an amended complaint against Terrell, Georgy,

5

Ittayem, Newland and the Federal Bureau of Prisons ("BOP"), again asserting that he was being denied proper medication to treat his AIDS. (*See* Am. Compl., Dkt. Entry 14.) On August 6, 2011, Plaintiff sought leave to file a Second Amended Complaint in order to clarify his claims. (*See* Mot. for Am. Pleading, Dkt. Entry 55-1.) The Second Amended Complaint also added the DOJ as a defendant, but did not include any claims against Ittayem and the BOP. (*See* 2d Am. Compl.) Over Defendants' objection, on October 20, 2011, Plaintiff was granted leave to file the Second Amended Complaint. (*See* Order, Dkt. Entry 66.)

Defendants moved to dismiss the Second Amended Complaint and, in the alternative, for summary judgment. Defendants contend that Plaintiff's claims must be dismissed because: i) Plaintiff did not exhaust his administrative remedies before bringing this action; ii) there is no subject matter jurisdiction for constitutional claims against the DOJ; iii) claims against Terrell and Georgy are based upon supervisory liability, which is not cognizable under *Bivens*; iv) Plaintiff was provided with adequate medical care; and v) Defendants are entitled to qualified immunity. (*See* Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss or, in the Alternative, for Summ. J, Dkt. Entry 98-4 ("Defs.' Mem.").) Plaintiff opposed the motion, asserting that he exhausted his administrative remedies and did not receive adequate medical care because the medication he was given, Atripla, was not meant to treat AIDS and his physicians were not infectious disease specialists. (*See generally* Pl.'s Opp'n.)[5]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving

---

[5] Because the court grants Defendants' motion on exhaustion grounds, the court need not address the other grounds raised in their motion papers.

6

party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F. 3d 396, 400 (2d Cir. 1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Grp., Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

The court holds *pro se* pleadings to "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The court construes them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

## DISCUSSION

Defendants contend that Plaintiff's claims are barred because he failed to exhaust the BOP's administrative remedy process before bringing this action. (*See* Defs.' Mem. 12-17.) Defendants maintain that there is no record that Plaintiff filed any administrative remedy request until September 29, 2010, three months after this action was filed, and that he never brought that process to a completion because he never properly filed a BP-11. (*Id*. at 15-16.) Defendants further assert that, even assuming Plaintiff did file a BP-9, BP-10 and BP-11 during April and

7

May 2010, as Plaintiff claims, he did not exhaust his administrative remedies because he claimed he filed the administrative appeals before the BOP's allotted response time had expired. (*Id.* at 16-17.) Construing Plaintiff's opposition papers to raise the strongest arguments they suggest, Plaintiff contends that he exhausted his administrative remedies by filing a BP-9, BP-10 and BP-11 in April and May 2010, before bringing this action. (*See* Pl.'s Opp'n ¶ 70.) Plaintiff also appears to assert that he exhausted his administrative remedies after filing this action because: i) he did not have to seek any administrative remedies after he was granted the relief he sought in his June 16, 2010 BP-8, when he was promised that he would receive the blood test and medications he was seeking; ii) he obtained the relief he sought in his January 14, 2011 BP-9, when he was informed that the tests had been performed; and iii) he properly followed the appeal process and filed a BP-11 with the Central Office. (*See id.* ¶¶ 71, 83, 85-89.) Finally, Plaintiff suggests that he did not have to follow the administrative review process because his claims did not affect the entire prison population. (*See id.* ¶ 71.)

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to *Bivens* claims. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even where there is a disputed issue of fact. *See Messa v. Goord*, 652 F. 3d 305, 309 (2d Cir. 2011) ("[Plaintiff] is incorrect that the presence of disputed material facts converts exhaustion into a jury issue.").

"[F]iling an untimely or otherwise procedurally defective administrative grievance or

appeal" does not satisfy the PLRA's exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Courts must construe the exhaustion requirement strictly because "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction" and "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 95.

The BOP has established a four-step administrative remedies process that federal inmates must follow to meet the PLRA's exhaustion requirement. First, an inmate must informally present an issue of concern to the staff, who shall then attempt to resolve the issue before that inmate submits a Request for Administrative Remedy. 28 C.F.R. § 542.13(a). Second, if the inmate is dissatisfied with the informal resolution of his issue of concern, the inmate must submit a formal written Administrative Remedy Request on a BP-9 form 20 calendar days following the date on which the basis for a remedy request occurred. 28 C.F.R. § 542.14(a). Third, an inmate who is not satisfied with the warden's response may submit an appeal on a BP-10 form to the Regional Director within 20 calendar days of the date of the warden's signed response. 28 C.F.R. § 542.15. Finally, an inmate who is not satisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel at the Central Office of Appeals within 30 calendar days of the Regional Director's signed response. *Id.* The inmate must use the appropriate forms, which are obtained from the prison staff. 28 C.F.R. §§ 542.14(c), 542.15(b).

Here, Plaintiff did not follow the four-step administrative remedy process before filing this action on June 25, 2010. Plaintiff asserts that he filed a BP-9, BP-10 and BP-11 respectively on April 13, May 2, and May 23, 2010, and submits copies of the BP-9 and BP-11 bearing those

9

dates. (*See* Pl.'s Opp'n Exs. 13-14.) However, Defendants have provided a printout from the BOP's SENTRY computer system, which records each instance an inmate seeks an administrative remedy, showing that Plaintiff did not file any formal administrative requests until September 29, 2010. (Bork Decl. ¶¶ 5, 12, Ex. 2.)

The court credits the BOP's records, but even if the records were incorrect and Plaintiff filed the forms as he claims, he still would not have exhausted his administrative remedies. After the forms are logged, the BOP has up to 20 days to respond to a BP-9 form, up to 30 days to respond to a BP-10 form, and up to 40 days to respond to a BP-11 form. 28 C.F.R. § 542.18. Plaintiff claims that, after failing to receive a response to his BP-10, he filed his BP-11 only 21 days after filing his BP-10 and then filed this action 33 days after filing his BP-11. (*See* Pl.'s Opp'n Exs. 13-14.) Therefore, even assuming the BOP logged his forms the same day he sent them, Plaintiff filed his BP-11 nine days prematurely and brought this action seven days before the BOP had to respond to his BP-11. Plaintiff was entitled to assume his appeal was denied because he did not get a response from the BOP only if he did "not receive a response *within the time allotted for reply*." 28 C.F.R. § 542.18 (emphasis added). It would make little sense to allow inmates to exhaust their administrative remedies by filing appeals before the BOP's allotted time to respond has expired. It would allow inmates to short circuit the administrative process by filing administrative remedy request forms to each level and a court action simultaneously, before the BOP had a chance to address the issue and respond. This would turn the PLRA's exhaustion provision "into a largely useless appendage" and undermine its purpose of affording "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93.

Plaintiff also cannot rely on the administrative remedies he sought after filing this action

10

to show exhaustion. "'[T]he PLRA requires an inmate to exhaust his administrative remedies *prior* to the commencement of a federal suit.'" *Culbertson v. Cameron*, 2010 WL 1269777, at *4 (E.D.N.Y. Mar. 30, 2010) (quoting *Petit v. Bender*, 2003 WL 22743485, at *6 (S.D.N.Y. Nov. 19, 2003)). "Subsequent exhaustion after suit is filed therefore is insufficient." *Neal v. Goord*, 267 F. 3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. at 532. Accordingly, this action cannot proceed based upon Plaintiff's filings on September 29, October 5, December 30, 2010, January 14, February 14, and May 2, 2011. The court also notes that the two BP-11 forms Plaintiff filed after bringing this action were rejected by the Central Office because they were filed improperly. (*See* Bork Decl. ¶ 17, Ex. 2; Eichenholtz Decl. Ex. B., US192.) Thus, even if the court considered his administrative filings after he brought this action, his remedies still are unexhausted.

Plaintiff also asserts that he did not have to seek any additional administrative remedies after filing his BP-8 on June 16, 2010 because, in response, Plaintiff was promised he would receive the blood tests and medication he was seeking. (*See* Pl.'s Opp'n ¶ 71.) However, in response to the BP-8, Plaintiff was encouraged to sign up for sick call to discuss his issues with his doctor. (Pl.'s Opp'n Ex. 15.) Plaintiff's claim that somehow his grievance was resolved by this response contradicts Plaintiff's theory that Defendants were deliberately indifferent to his medical condition because they did not perform the appropriate blood test and prescribe the proper medications until April 11, 2011. (*See* 2d Am. Compl. ¶¶ 3-4; Pl.'s Opp'n ¶ 69.) Plaintiff cannot have it both ways. Either his grievance was satisfied on June 16, 2010 and he does not have any basis to bring this action, or he still was dissatisfied with his medical treatment following the June 16, 2010 response and, therefore, his administrative remedies were not exhausted.

Finally, Plaintiff's claim that he did not have to utilize the administrative process because his dispute did not affect the prison population generally is meritless. Plaintiff cites to *Lawrence v. Goord*, 238 F. 3d 182 (2d Cir. 2001), but this decision was vacated by the Supreme Court. *Goord v. Lawrence*, 535 U.S. 901 (2002). On remand, the Second Circuit held in *Lawrence* that, in light of the Supreme Court's decision in *Porter*, inmates had to exhaust their administrative remedies prior to bringing a court action, even if their grievance did not relate to the prison population generally. *See Lawrence v. Goord*, 304 F. 3d 198, 200 (2d Cir. 2002).

Accordingly, Plaintiff has not exhausted his administrative remedies and his *Bivens* claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and the complaint is dismissed without prejudice to re-file once Plaintiff properly exhausts his administrative remedies. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       September 25, 2012

_____/s/_____
DORA L. IRIZARRY
United States District Judge